# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM F. HARVEY | : | |
| 2710 Macomb Street | : | |
| Unit 305 | : | |
| Washington, DC  20008 | : | |
| | : | |
|     by his agent/power of attorney | : | |
|     GLENDA BROWN | : | |
|     4466 Gilberts Beach Road | : | |
|     Tyner, NC  27980 | : | |
| | : | |
|        Plaintiff | : | |
| | : | |
|     v. | : | Case No. _____ |
| | : | JURY TRIAL DEMANDED |
| AMY E. SYMONS | : | |
| 360 S Monroe Street, Apt. 114 | : | |
| Denver, CO  80209 | : | |
| | : | |
|     and | : | |
| | : | |
| THE LAW FIRM OF AMY E. SYMONS, | : | |
| LLC d/b/a COLORADO PROBATE LAW | : | |
| | : | |
| a/k/a Symons Says | : | |
| a/k/a Probate and Planning | : | |
| a/k/a Probate and Planning Law Group | : | |
| | : | |
| Ptarmigan Building | : | |
| 3773 Cherry Creek N Drive | : | |
| Suite 600 – West Tower | : | |
| Denver, CO  80209 | : | |
| | : | |
|     SERVE: | : | |
| | : | |
| Registered Agent: | : | |
|     Amy E. Symons | : | |
|     3773 E Cherry Creek North Dr | : | |
|     Suite 600 | : | |
|     Denver, CO  80209 | : | |
| | : | |
|        Defendants. | : | |

## VERIFIED COMPLAINT FOR EQUITABLE RELIEF
## (INJUNCTIVE RELIEF AND ACCOUNTING) AND DAMAGES

Plaintiff, William F. Harvey ("Plaintiff" or "William"), by his lawful designated agent and power of attorney, Glenda Brown ("Agent" or "Glenda"), and by and through counsel, Alexia Kent McClure and the law firm of Stein Sperling Bennett De Jong Driscoll PC, hereby sues and demands equitable relief, including injunctive relief and an accounting, and judgment against Defendant, Amy E. Symons ("Defendant Symons"), and Defendant, The Law Firm of Amy E. Symons, LLC d/b/a Colorado Probate Law a/k/a "Symons Says," "Probate and Planning," and "Probate and Planning Law Group," ("Defendant Law Firm") (collectively "Defendants"), and as grounds therefor, states as follows:

### INTRODUCTION

William is 80 years of age, is well-educated having earned a law degree from the University of Virginia, and for 50 years William has lived independently in the District of Columbia. William presently has, and always has had, capacity to make decisions related to his property, finances, assets, and healthcare. Throughout his professional career he helped others with planning for retirement, estate planning, and the like.

Defendant Symons is a legal practitioner. Defendant Symons is admitted to practice law in the State of Colorado and is "retired" from the practice of law in the District of Columbia. Defendant Symons knows the primary duties, laws, and rules that apply to her. Defendant Symons befriended William about 20 years ago. William always had trusted Defendant Symons. On or about November 6, 2024, William changed his mind about Defendant Symons. Defendant Symons gave him objectively good cause to cut his professional connection to her.

On November 6, 2024, Defendants sent a proposed fee agreement to William for legal services for proposed going forward "Legal Work" to include power of attorney services.

2

Defendant Symons wrote into her proposed fee agreement letter, "I love you." She made it easy for William to demonstrate any agreement by countersigning the proposed fee agreement. William promptly declined her in writing. Defendants simultaneously invoiced William as though he had agreed, billing him for various "tasks" Defendants claimed to have done for his benefit in the preceding about one and a half months. Defendant Symons topped Defendants' invoice with her cursive handwritten note, "William – please confirm you are okay with me paying this. [heart sign], Amy[.]" William was not "okay" with this. He declined her invitation to pay to her $22,451.01 for tasks that if undertaken were voluntary and nothing for which William owed any fees to Defendants.

William did *not* agree to the terms of Defendants' proposed fee agreement. William did *not* countersign Defendants' proposed fee agreement. William promptly wrote to Defendant Symons communicating in his own hand that he did *not* want such services from her. Instead, William asked his cousin, Glenda Brown, if she was amenable to him designating her as his going forward attorney-in-fact for financial and health care matters, as may be helpful in the future. Glenda was and remains able and willing to help William, whom she affectionately refers to as Freddie.

On December 18, 2024, William revoked prior powers of attorney, including powers of attorney he had signed in 2016. William designated Glenda as his attorney-in-fact for financial and health care matters. A few weeks later, Glenda informed Defendant Symons of this in writing. Defendant Symons launched a rampage of wreaking havoc for William, directly and by his designated agent, Glenda. Without restraint, pause, or regard for consequences, Defendant Symons has sought control of William and his life savings, using means such as:  dishonesty with numerous third parties contractually connected to William for decades; dishonesty with William; secreting

over recent months chunks of William's life savings out of the District of Columbia and into the State of Colorado; disregarding William's reasonable expectations, directions and instructions (written and oral); harassing William and his Agent; and unlawfully withholding most all information about what she has done and continues to do with his life savings.

Defendants have locked William out of access to his financial resources. Defendants have handcuffed his Agent. Defendants left William with his pouch of emergency cash that he never should have needed. Now what remains in that pouch is his only accessible resource to purchase food at the local grocery store.

"Symons Says" is Defendants' trade name. When William discovered Defendant Symons' game in November 2024, William chose not to play. He told her that. It fueled her. Defendants turned William's retirement and enjoyment of his golden years into the fight of his life. William, by his lawful Agent and power of attorney Glenda, necessarily seeks emergency and preliminary injunctive relief at the outset, to stop Defendants from trampling William, William's rights, and William's spirit.

<u>PARTIES</u>

1.      Plaintiff is an adult individual and resides at 2710 Macomb Street, Unit 305, in the District of Columbia. He was born on March 9, 1945. He is 80 years of age.

2.      Glenda Brown is an adult individual and resides at 4466 Gilberts Beach Road, Tyner, North Carolina. Glenda is 75 years of age. William and Glenda are cousins and have been connected since childhood. On December 18, 2024, William formally authorized Glenda to serve as his power of attorney – both for financial and health care matters. The effective Durable Power of Attorney authorized Glenda to bring this civil action on behalf of William. In addition, William specifically authorized filing to seek the requisite relief sought herein.

3.      Defendant Symons is an adult individual who, upon information and belief, resides at 360 S Monroe Street, Apt. 114, Denver, Colorado. Upon information and belief, Defendant Symons is licensed to practice law in the State of Colorado, as well as in the District of Columbia ("resigned") and the Commonwealth of Virginia ("resigned").

4.      Defendant Law Firm is a limited liability organized and existing under the laws of the State of Colorado. Upon information Defendant Symons organized Defendant Law Firm on October 8, 2009. Defendant Symons has operated Defendant Law Firm under four trade names including "Symons Says" and "Probate and Planning", "Probate and Planning Law Group", and "Colorado Probate Law."

<u>JURISDICTION AND VENUE</u>

5.      This Court has subject matter jurisdiction over the causes of action alleged in this Verified Complaint pursuant to 28 U.S.C. § 1332.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

<u>FACTS</u>

*Background*

7.      William has resided in the District of Columbia for over 50 years. William earned a law degree from the University of Virginia. For most of his professional career, William provided financial planning services on behalf of Riggs Bank, later acquired by PNC Financial Services, followed by providing such services on behalf of Sandy Spring Bank. William retired five years ago.

8.      William never married and has no children.

9.      William has had a close and caring relationship with his cousin Glenda dating back to childhood.

10.    William has been a Mason, part of the Masonic family community in the District of Columbia, for decades.

11.    William lives independently and is able to perform all daily living activities on his own.

12.    At all times in his adult life, Willam has had capacity to make decisions related to his property, finances, assets and healthcare, in all respects. This is confirmed by a recent examination by and well-qualified medical opinion of Guillermo Portillo, M.D. of Potomac Psychiatry.

13.    Roughly 20 years ago, Defendant Symons befriended William.

*2016 Limited/Conditional Powers of Attorney – 11/9/2016*

14.    On November 9, 2016, William executed a Durable Power of Attorney for Financial Management ("2016 Limited POA" or "Revoked POA—Financial") in the State of Maryland that identifies Defendant Symons of "3773 Cherry Creek N Drive, Suite 575, Denver, Colorado," as his attorney-in-fact; and a Durable Power of Attorney for Health Care (collectively, "2016 Limited POAs" or "Revoked Limited POAs").

15.    At the time William executed the 2016 Limited POAs he did not need any assistance with his financial affairs or any health care matter. William then contemplated ed a 2017 hip surgery. He thought it prudent to have someone designated potentially to assist in the unlikely event of surgery complications that would prevent him from making financial or health care decisions in the 2016-2017 time frame.

16.    Upon information and belief, Defendant Symons and/or Defendants prepared the 2016 Limited POAs.

17.     The last line of the 2016 Limited POA, immediately preceding the line for William's signature, states, in pertinent part, that he "recognize[s] that the powers given in *this document will become effective as of the date of my incapacity* or as specified within."[1]

18.     On November 12, 2024, Defendant Symons admits that the Durable Power of Attorney for Health Care is "only effective if William is unable to make his own healthcare decisions. That could be a bit of a high bar[.]"

19.     Upon information and belief, Defendants drafted the 2016 Limited POAs with an eye towards self-service, such as providing for personal gain.

*Proposed "Fee Agreement" Letter "for Amy Symons and the staff of Colorado Probate Law" for "Legal Work and Legal Fees" in connection with "Durable Power of Attorneys for Financial Management and Health Care"—11/6/2024*

20.     On November 6, 2024, Defendants sent to "William F. Harvey, Esq." a letter with the following subject line:

> Re:     Fee Agreement for Amy Symons and the staff of Colorado Probate Law
> as Agent under Durable Power [sic] of Attorneys [sic] for
> Financial Management and Health Care
> Client Number 081338.2401

This letter hereinafter is referred to as "Defendants' Proposed Fee Agreement."

21.     In Defendants' Proposed Fee Agreement, Defendants admit that the 2016 designations "exhibits much trust" in them; and self-describe Defendant Symon's "fiduciary obligations" and treatment of any "Agent" service, "as I would a client matter[.]"

22.     In Defendants' Proposed Fee Agreement, Defendant Symons writes at top of page 5, "William, I love you and am very grateful for our friendship." "[O]ne of the reasons I love you is that I know that you understand how much time it can take to get a system that works in place for both of us."

---

[1] [Emphasis added.]

7

23.     Defendants write at page 5, "<u>If you are in agreement with the terms of this letter, please sign one copy of the letter and return it to me in the self-addressed stamped envelope enclosed for that purpose.</u> Please keep the other letter for your records."[2]

24.     Defendants' Proposed Fee Agreement has a counter-signature block for William that leads with, "The above letter correctly sets forth our agreement."

25.     William did *not* agree with the terms of Defendants' Proposed Fee Agreement.

26.     William did *not* counter-sign Defendants' Proposed Fee Agreement.

*Defendants Invoice William on November 6, 2024 for $22,451.01 –
Pursuant to Defendants' Proposed Fee Agreement of Same Date*

27.     Also on November 6, 2024, Defendants invoiced William in the amount of $22,451.01, Payment Terms, "Due on Receipt" covering alleged fees owed for "Time Entries" dating back to September 26, 2024. Defendants purport to charge William for fees up to $490 per hour for Defendant Symons.

28.     At the top of Defendants' invoice, Defendant Symons hand writes in cursive, "William – please confirm you are okay with me paying this. [heart sign], Amy[.]"

29.     Defendants' time entry on 09/26/2024 states, in pertinent part, "explain to Glenda that she does not need to do anything regarding trying to determine whether I am designated as agent still for William but simply let him know I am coming out[.]"

*William Timely Rejects Defendants' Proposed Fee Agreement*

30.     William affirmatively and timely communicated his written rejection of Defendants' Proposed Fee Agreement.

31.     Specifically, on November 22, 2024, William communicated to Defendant Symons in his cursive handwriting, as follows:

---

[2] [Underlining emphasis in original.]

8

*Thank you for everything you have done to help me.*

*I am not comfortable with the Fee Agreement for Amy Symons and the Staff of Colorado Probate Law as Agent under Durable Power of Attorneys for Financial Management and Health Care — Client Number 081338-2401 dated Nov 6, 2024.*

*Please do not incur further expenses.*

*Thank you for your help.*

*William F. Harvey*

32.    Meanwhile, shortly after November 22, 2024, Defendant Symons decidedly led a number of third persons to believe that she represented and/or otherwise spoke for William – based on her status as a legal practitioner, founder/principal of Defendant Law Firm, and designated agent on the 2016 Limited POAs. Most of these third persons were associated with longstanding business relationships that William had maintained.

*William Revokes Prior POAs and Designates Glenda Brown as Lawful Agent—12/18/2024*

33.    On December 18, 2024, William executed a lawful, valid Durable Power of Attorney in the District of Columbia that identifies Glenda Brown of 4466 Gilberts Beach Rd, Tyner, NC as his power of attorney ("Operative POA").[3] At the same time, William executed a lawful, valid Durable Power of Attorney for Health Care that identifies Glenda as his attorney-in-fact for health care.

34.    At all times since December 18, 2024, the Operative POA and Durable Power of Attorney for Health Care of same date have been in full force and valid effect.

35.    On or about January 13, 2025, Glenda sent a letter to Defendants stating, in pertinent part, as follows:

---

[3] A copy of the Operative POA is attached hereto as <u>Exhibit 1</u> and adopted herein.

I am writing this letter to let you know that William has signed and had notarized documents for health and financial matters for me to serve as his power of attorney. He and I appreciate all that you have done, but it makes more sense financially and logistically for someone who lives closer to help him. He is not mad, but you know how conservative he is. We had a long talk after he received your contract and bill for $22,451. At that time, he asked if I would consider being his power of attorney.

36.    On January 19, 2025, Defendant Symons acknowledged receipt of same.

*Defendants' Harassment, Intimidation, Stalking, and Threats Commence*

37.    On and about January 20, 2025, Defendant Symons commenced harassing William and seeking to harass, intimidate, and place fear in Glenda. In doing so, Defendant Symons unreasonably and seriously interfered with William's protected interests.

38.    Defendant Symons' harassment and intimidation of Glenda has included leveling threats to her in her capacity as Agent for William, seeking to instill fear in her for aiding and supporting William. Nothing has chilled Defendant Symons, including Rules of Professional Conduct applicable to her as a long-time legal practitioner.

39.    On January 20, 2025, Defendant Symons wrote to Glenda suggesting that the execution of the Operative POA constitutes "elder abuse." Defendant Symons, a legal practitioner, suggested to Glenda that "Elder abuse may rise to a felony in North Carolina and the District of Columbia. The severity of the crime depends on many factors, and I am hoping your willingness to cooperate is evidence that your intentions were not sinister."

40.    On January 20, 2025, Defendant Symons wrote to Glenda, "As you know, William loves you and you are an emotional support for him. I encourage you to continue to speak with him frequently." Defendant Symons then proceeded to declare and threaten,

At this time, **please do not visit William in his home on Macomb Street in Washington, D.C.** I will keep you apprised of when he relates to a new home (perhaps he will as well). I am not comfortable with you being in William's home or presence without me also being present. Please understand that if you ignore this request, I will call Adult Protective Services and DCPD and explain that I have filed an elder abuse report

with the D.C. Attorney General based on your letter to me of last week and our phone call on January 19, 2025.[4]

41.    On January 20, 2025, Defendant Symons admitted, in pertinent part, "William has said to me repeatedly this last week that he thought I was an annoyance and a burden to him[.]"

42.    On January 22, 2025, Glenda wrote to Defendant Symons, stating, in pertinent part, "I have read both emails that you sent me regarding power of attorney documents that William willingly signed on December 18, 2024 in the presence of a notary public and two witnesses. After I have consulted an attorney, you will receive a reply to your emails." Later that day, Defendant Symons replied, stating, in pertinent part, "As counsel will explain, it will be appropriate for counsel to reach out to me rather than you once you have retained counsel."

43.    On and about January 29-30, 2025, Defendant Symons placed repeated unwanted calls to William and Glenda.

44.    Upon information and belief, in and about latter January 2025, Defendant Symons was tracking William on his cell phone.

45.    In and about the first days of February 2025, Defendant Symons persistently placed unwanted calls to William. The persistent unwanted contacts were quite upsetting to William. William became concerned about answering his phone.

46.    On February 3, 2025, Defendant Symons again placed an unwanted call to William. Upon information and belief, she communicated to William that she intended to get his property manager and Board for his condominium community, Macomb House, involved. William reported this to Glenda as harassment of him by Defendant Symons.

47.    On or about February 4, 2025, Defendant Symons communicated false statements of material fact and/or law to the property manager for William's condominium community. This

_____

[4] [Bold and underline emphasis in original.]

11

includes Defendant Symons writing to the property manager, "William did not have legal capacity to sign that document [Operative POA]." Defendant Symons further wrote to the property manager for William's condominium community that because Defendant Symons had not "reviewed" the Operative POA, that Defendant Symons "filed an elder abuse claim with D.C. Adult Protective Services." Defendant Symons implored the property manager to disregard Glenda's written notice of the Operative POA executed on December 18, 2024.

48.     Similarly, in and about this time frame, Defendant Symons communicated similar false statements of material fact and/or law to financial and banking institutions with whom William has maintained longstanding relationships. For example, Capital One stated that an alert was placed on William's Capital One account based on Defendant Symons communicating the substantively same false statements as relayed to the property manager.

49.     On or about February 4, 2025, William and his Agent learned that William's U.S. mail service had been re-routed. William, understandably alarmed and upset, contacted Glenda regarding this. On same date William contacted the USPS to register a complaint about his mail being redirected without his authorization. On or about February 5, 2025, William received a return call from USPS stating in substance that the involuntary forwarding of his mail had been taken care of.

50.     On or about February 8, 2025, Defendant Symons showed up uninvited to William's home. Glenda was present at the time. Defendant Symons started getting ugly with Glenda. Glenda informed Defendant Symons what she already knew from the cease-and-desist letter of five days prior, and had acknowledged in writing herself, that she should communicate through counsel. Defendant Symons has sought to antagonize and belittle Glenda as Agent. Glenda informed Defendant Symons it was time for her to go. Defendant Symons refused to leave. Glenda

communicated to William that Defendant Symons purportedly was concerned that Glenda was influencing him, and that Defendant Symons is trying to protect him from Glenda. William responded that he can appreciate that but that is not the case. Glenda reminded Defendant Symons to communicate through counsel. Defendant Symons retorted, "no I'm talking to you, Glenda[.]" Defendant Symons admitted that she knows that William is competent but nonetheless wants him to have that documented by a doctor. William communicated that he is not doing that now because he is fine and can make decisions himself. William repeated to Defendant Symons that her presence in his home was and remained unwelcome and to leave. William asked the male companion that Defendant Symons brought with her to get Defendant Symons out of his home right now. William communicated he never wants to see or speak to her, he wants no contact with her, and that Defendant Symons needs to leave him alone and stop trying to run his life.

51.     On or about the same date of February 8, 2025, Defendant Symons unlawfully stopped payment on two checks of William that he personally had deposited into his longstanding PNC checking account.

52.     On Wednesday, February 26, 2025, after calling Charles Schwab attempting to unwind some of the lies that Defendants were using financially to tie his and his Agent's hands, William called Defendant Symons and in no uncertain terms reiterated that she stop her actions and stay away.

53.     Immediately after Defendant Symons was reminded by William that he did not want her contacting him, she made her foray into potential violation of Rule 4.2 of the Rules of Professional Conduct.

54.     On March 9, 2025, William celebrated his 80th birthday on the heels of Defendant Symons, by unlawful means, having the doors to his financial accounts and life savings shut on

him at every turn. Defendant Symons disregarded William's multiple prior requests that she leave William alone and called William on his birthday. William told Defendant Symons again he did not want to talk to her and hung up.

55.    On March 22, 2025, Defendant Symons placed another unwelcome call to William. He communicated that she should contact his attorney and communicate through counsel. William was very upset about the persistent harassment and Defendant Symons' refusal to honor his requests to not contact him and stay away.

*Cease and Desist Letter to Defendants—February 3, 2025*

56.    On February 3, 2025, Glenda, by undersigned counsel for Glenda in her capacity as POA for/for the benefit of William, transmitted to Defendants, via Federal Express and electronic mail, a cease-and-desist letter.[5]

57.    The cease-and-desist letter, provides, in pertinent part, as follows:

This letter serves as a formal notice that you are *not* authorized or designated to serve as Mr. Harvey's agent or health care agent. You have *not* been authorized or designated to serve since at least December 18, 2024. Specifically, both Mr. Harvey's POA and Health Care POA revoke any and all prior authority and power to you in any form.[6]

Therefore, this letter serves as a demand for you immediately to cease and desist from representing that you have authority to act on Mr. Harvey's behalf as either his agent under a power of attorney or as his health care agent, as well as immediately to cease and desist from taking any action of any kind or sort that involves Mr. Harvey's finances, health, and any action or decision associated with either.

Likewise, this letter serves as a demand for you immediately to cease and desist from using words or action designed to harass, intimidate, and/or threaten Ms. Brown in an attempt to dissuade her from performing her duties as POA and Health Care POA for Mr. Harvey, as well as using words or action in an attempt directly or indirectly to coerce or manipulate Mr. Harvey into anything.

---

[5] Confirmed that Defendant Symons received it in hard copy on the morning of Wednesday, February 5, 2025.
[6] Footnote omitted re: written notice to cease directly provided by William 2 ½ months before.

Accordingly, Ms. Brown demands that you immediately cease and desist from acting or attempting to act under a revoked power of attorney or the like, as well as representing or suggesting to any person that you have any authority to act and/or attempting to act purportedly on Mr. Harvey's behalf in any setting. Further, as stated, Ms. Brown hereby demands that you immediately cease and desist from attempting to and in fact intimidating and harassing her, as well as attempting to and in fact intimidating, harassing, and seeking to coerce Mr. Harvey into acquiescing to your demands. Mr. Harvey's trust is with Ms. Brown and he delegated authority strictly to her.

*Please provide written confirmation to the undersigned within three (3) days of the date of this letter that you will honor the foregoing. Time is of the essence.*

*Within ten (10) days of the date of this letter, please voluntarily provide a complete itemization of all monies and other assets you directed to yourself and/or your firm from Mr. Harvey's assets, including as to each, date; amount; identity of the source account of Mr. Harvey, as applicable; identity of the receiving institution, as applicable; precise purpose of the transfer; and your contemporaneous documentation of the transfer. Time is of the essence.*

This is a serious matter and requires your prompt attention.

58.    Defendants declined to respond to the cease-and-desist letter regarding confirming that Defendant Symons would honor William's revocations of prior POA authority.

59.    Defendants declined to respond to the cease-and-desist letter on the topic of itemizing all monies and other assets Defendant Symons directed to herself and/or Defendant Law Firm from William's assets.

60.    To date, Defendants have failed to disclose anything meaningful, requested or otherwise, regarding their unlawful activities involving William's life savings, including the disbursements and transactions. Depriving William and his Agent of access and use of William's financial and bank accounts, and information about their actions (what, when, where, how), is a major part of Defendants' agenda.

61.     Three weeks after the cease-and-desist letter was provided to Defendants, along with copies of the Operative POA and Durable Power of Attorney for Health Care, counsel for Defendant Symons first appeared.

62.     On March 3, 2025, undersigned counsel provided a substantive communication to Defendant Symons' counsel, that included a copy of the cease-and-desist letter, and courtesy copies of Rule 4.2 in the District of Columbia and the State of Colorado, respectively. The March 3, 2025 communication to Defendant Symons' counsel, further states, in pertinent part,

> *Within ten (10) days of the date of this letter, please voluntarily provide a complete itemization of all monies and other assets you directed to yourself and/or your firm from Mr. Harvey's assets, including as to each, date; amount; identity of the source account of Mr. Harvey, as applicable; identity of the receiving institution, as applicable; precise purpose of the transfer; and your contemporaneous documentation of the transfer. Time is of the essence.*
>
> *This is a serious matter and requires your prompt attention.*
>
> None of this was received. Please promptly provide this important information (itemization of all monies and other assets Ms. Symons directed to herself and/or her firm from Mr. Harvey's assets) requested one month ago from Ms. Symons. Thank you.
>
> ***
>
> It appears that Ms. Symons has disregarded, among other things, (i) the cease-and-desist letter, (ii) William Harvey's revocation of prior authority he had entrusted to Ms. Symons; and (iii) direction and instructions given to Ms. Symons by Mr. Harvey and Glenda Brown in her capacity as POA for/for the benefit of Mr. Harvey.
>
> It is this firm's understanding that Mr. Harvey's revocation of prior authority entrusted to Ms. Symons occurred shortly after she billed him over $22,000 on or about November 6, 2024. It is this firm's understanding that there is no countersigned engagement letter with Mr. Harvey.

[Emphasis in original.]

63.     Defendant Symons still failed to account in any part for any of her disbursements to herself and/or Defendant Law Firm, and transactions.

64.     One week later, on March 10, 2025, undersigned counsel wrote to Defendant Symons' counsel stating, in pertinent part,

In follow-up to our communication to you on Monday, March 3, 2025, and in preparation for us having an opportunity to connect by phone, please address the following:

1. Is Amy Symons, by you as counsel, voluntarily providing any of the requested complete itemization of all monies and other assets she directed to herself and/or her firm from William Harvey's assets? This was requested in the cease-and-desist letter she received via Federal Express and electronic mail one month ago. For starters, please forward this information for at least since 10/15/2024.

2. Please advise whether you also represent the law firm doing business as "Colorado Probate Law."

3. Please forward to us whatever are the documents on which Amy Symons and Colorado Probate Law rely for purporting to act on behalf of William Harvey post his *revocation* last year of the Durable Power of Attorney for Financial Management executed 11/9/2016, and all other powers of attorney that he had signed.

4. Please forward to us all communications and documents Amy Symons sent in the last five months to financial institutions in which William Harvey has his accounts to facilitate excluding William Harvey from actual, practical access to and use of his lifetime savings, and unlawfully disregarding and interfering with a valid POA he executed last year in favor of his cousin Glenda Brown.

5. Our below communication on Monday, March 3, 2025, includes, in part, informing you, "Ms. Symons, an attorney, communicated about the subject matter of this firm's representation with the firm's client." For ease of reference, we included courtesy copies of Rule 4.2 in the District of Columbia and the State of Colorado.

   Three days later, Amy Symons saw fit to disregard the written notice to cease contact and on Thursday, March 6, 2025 resumed sending text messages directly to Ms. Brown. Please advise Amy Symons that she shall not directly contact Glenda Brown in her capacity as POA for/for the benefit of William Harvey or for any other improper reason. Any such communication is unwelcome, harassing, and at odds with applicable Rules of Professional Conduct.

   ***

   Without legal excuse or justification, Amy Symons directly and by her firm d/b/a Colorado Probate Law have been engaged in troubling activity that appears to constitute abuse, exploitation, willful material breaches of fiduciary duty, and the like as to William Harvey, and other unlawful activity and interference as to Mr. Harvey and Ms. Brown. Mr. Harvey's life and life savings belong to him—not Amy Symons. Amy Symons and her firm have taken from Mr. Harvey to such a degree that as a practical matter they left him with virtually no access to his resources.

   Amy Symons and her firm have handcuffed Mr. Harvey and those he trusts and designated to serve his interests. Amy Symons knows that this course of conduct would cause Mr. Harvey reasonably to feel seriously alarmed, disturbed, or frightened, and to suffer significant distress and fear. Amy Symons has disserved Mr. Harvey.

   ***

17

Please provide preliminary input as to the foregoing before our currently scheduled call. Lead item #1 is part of what Amy Symons reasonably was requested to provide over a month ago. Despite her duty to have maintained and to provide such information, she acknowledged nothing, provided nothing, and did not request any additional time. If a couple additional days are needed to gather or relay meaningful input on ## 1-4 above, then let's shift our call to Wednesday.

Thank you for your attention to this serious matter.

65.    Defendant Symons further still failed to account in any part for any of her disbursements to herself and/or Defendant Law Firm, and transactions.

*Defendants' Financial Exploitation of William*

66.    Willam is an "elderly person" as defined in D.C. Code § 22-932.

67.    Defendants have used deception and intimidation, among other means, to obtain control of William's money, with the intent to deprive William of use of it.

68.    Due to Defendants' withholding of all information surrounding these actions, only pieces of information from the early stages are known to William. A sampling of these is below.

69.    William has maintained longstanding financial and banking account relations at institutions including PNC Bank, Capitol One, Charles Schwab, and Principal Financial.

70.    As a practical matter, the life savings funds that William maintained in his longstanding financial and banking accounts are inaccessible to him or his attorney-in-fact Glenda, by design of Defendants.

71.    William received his social security checks via his Charles Schwab account(s). By Defendants' unlawfully, intentionally interfering with the Charles Schwab account, among others, William has been denied access/use of his social security income.

72.    One practice of Defendants has been that at times when William would transfer funds from Charles Schwab to his longstanding PNC checking account, Defendants moved the funds to the State of Colorado.

73.     The fact that Defendants lacked William's knowledge, authorization, or consent for their actions, and their other financial exploitation of him, as discovered to date and generally described herein, was of no moment to them.

74.     Another practice of Defendants was largely draining William's longstanding Capital One checking account.

75.     Yet another goal of Defendants was causing William's longstanding PNC checking account to go red and, upon information and belief, shut down.

76.     On or about October 10, 2024, William had over $33,000 in his longstanding PNC checking account after he had transferred $20,000 from Charles Schwab.

77.     Defendants then proceeded to override that by moving $30,000 out of PNC in the Washington metropolitan area to the State of Colorado and out of reach of William. Defendants did this, as these other financial exploitations of William, without his knowledge, authorization, or consent. Now William only had about $3,600 remaining – 10% of what he intended to have on hand in his longstanding PNC checking account.

78.     On January 7, 2025, William called Charles Schwab and had $20,000 moved to his longstanding PNC checking account to bring the balance back over $20,000.

79.     On January 7, 2025, Defendants moved $10,000 from William's longstanding Capital One account to an account previously unknown to William, upon information and belief opened by Defendants in the State of Colorado, and about which he has no information, practical access, or ability to use. Defendants repeated this on January 23, 2025 ($10,000), and again on January 30, 2025 ($7,000), and yet again on February 4, 2025 ($7,500).

80.     Upon information and belief, on January 23, 2025, Defendants moved $16,000 from William's longstanding PNC account to one or more account(s) previously unknown to

William, upon information and belief opened by Defendants in the State of Colorado, and about which he has no information, practical access, or ability to use.

81.    On or about January 29, 2025, Glenda updated the password for William's longstanding PNC checking account, and updated the contact phone number from Defendant Symons to Glenda.

82.    On or about January 29, 2025, Defendant Symons demanded copies of William's estate planning documents. On and about same date, upon information and belief, Defendant Symons persistently called William.

83.    On or about January 29-30, 2025, Defendant Symons was sending threatening communications and making unwanted harassing calls to Glenda. Meanwhile, William and Glenda were attempting to enjoy a dinner.

84.    On or about January 31, 2025, Defendant Symons demanded certain personal financial information of William regarding his longstanding PNC checking account and pension.

85.    On February 5, 2025, William went to PNC Bank located at 7200 Wisconsin Avenue in Bethesda, Maryland, to deposit two distribution checks payable to "William Frederick Harvey," both dated January 13, 2025, into his longstanding PNC checking account: one in the amount of $13,458.24; and the other in the amount of $5,787.40.

86.    On or about February 5, 2025, Charles Schwab was updated about Glenda as the new attorney-in-fact for William and of the Revoked POA—Financial.

87.    On or about February 6, 2025, action was taken seeking to ensure integrity of William's longstanding PNC checking account.

88.     On or about February 7, 2025, PNC notified Glenda that Defendant Symons had gone to PNC in Colorado with her Revoked POA—Financial and misrepresented to PNC that the Revoked POA—Financial was operative and valid.

89.     On and about February 5-7, 2025, Defendant Symons caused PNC to stop payment on the two distribution checks that William personally had deposited into his longstanding PNC checking account on February 5, 2025. Upon information and belief, this caused William's PNC checking account to go red and ultimately be shut down.

90.     On or about February 21, 2025, it was learned that Defendant Symons successfully had frustrated William's access to all his Charles Schwab investment accounts. Charles Schwab issued a letter suggesting there was "conflicting information regarding the ownership over Mr. William Harvey's accounts" and thus restricted his accounts from him.

91.     On or about February 26, 2025, William called Charles Schwab attempting to regain access to his longstanding accounts maintained there. William then called Defendant Symons expressing his great discontent and frustration as to her disregard of his directions and wishes dating back 2-3 months that she shall not purport to act on his behalf.

92.     On or about February 26, 2025, William and Glenda went to Capital One Bank at 5459 Wisconsin Ave., Chevy Chase, Maryland 20815, where it orally was communicated to them that Defendant Symons had an alert placed on the account that William is "incompetent," communicating further false statements to this financial institution, and that someone else is trying to gain access to his account that should not be.

93.     Also on February 26, 2025, Defendant Symons directly contacted Glenda, contrary to direction and applicable Rules about such direct contact and demanded that William's cell phone be taken from him and sent to Defendant Symons.

94.     On February 27, 2025, William hand wrote a letter to Capital One, cc: Defendant Symons, formally to remove Defendant Symons from William's longstanding Capital One checking account, effectively immediately, and to place an alert on the account if any effort was made by Defendant Symons to access same.

*Rules of Professional Conduct Applicable to Defendant Symons*

95.     On February 3, 2025, Defendant Symons was advised, in the first sentence of the cease-and-desist letter, "This law firm represents Glenda Brown ("Ms. Brown"), in her capacity as attorney-in fact ("Agent") for/for the benefit of William Harvey ("Mr. Harvey") pursuant to his Durable Power of Attorney "("POA") and Durable Power Attorney for Health Care ("Health Care POA"), both effective as of December 18, 2024. Please direct all future communications regarding this matter to my attention."

96.     On February 26, 2025, Defendant Symons texted directly to Glenda in her capacity as attorney-in-fact for/for the benefit of William. She claimed that William's cell phone was her property, accused Glenda of stealing it, and threatened to "proceed with claims" if Glenda did not send William's phone to Defendant Symons. Defendant Symons also texted to Glenda, in pertinent part, "Also, it's defacto defamation Glenda, to tell William I am stealing from him. If I incur damages, I will ask a court to consider you liable." Of course, Glenda did not respond to the improper texts seeking to intimidate her.

97.     On March 3, 2025, undersigned counsel wrote to Defendant Symons counsel stating, in pertinent part, as follows:

> It appears that Ms. Symons has been taking some extraordinary actions contrary to law and Rules. An example of the latter occurred last week. It is this firm's understanding that Ms. Symons, an attorney, communicated about the subject matter of this firm's representation with the firm's client. This was not an oversight. Also, the nature of the communication suggests that it was done for an improper purpose. For ease of reference, attached please find courtesy copies of Rule 4.2 in the District of Columbia and the State of Colorado, respectively. Please note that there is a concern about, among other things, the

22

truthfulness/lack thereof of statements of material fact or law Ms. Symons likely has made to third persons as to any authority she purports to have on behalf of Mr. Harvey.

Thereafter, Defendant Symons did *not* proceed with caution.

98.    On March 6, 2025, Defendant Symons texted directly to Glenda, stating, in pertinent part,

> I am not sure what you explained to your construction defects attorney, but she appears to be confused. There is a rule that my lawyer cannot contact you and your lawyer cannot contact me. Even though I am a lawyer, I am not representing anyone in this matter. So there is no ethical rule that governs lawyers that precludes you from speaking to me or precludes me from speaking to you.

Defendant Symons proceeded, "I am his agent under a power of attorney he signed while he had contractual capacity, but I am not his friend." More true words could not have been stated than, "I am not his friend." Defendant Symons texted directly to Glenda yet again that date, "My mistake, that should have said, "…but I am not his lawyer." It would be helpful to know if you have counsel, Glenda." Defendant Symons had known that for a month.

99.    Defendant Symons, purporting to represent and speak for William, made false statements of material fact and/or law to third persons as described herein.

*Duty to Account – pre and post the Revoked Limited POA*s

100.    Defendant Symons as former attorney-in-fact for William, has a statutory legal duty to account to William or his designated agent Glenda for all receipts, disbursements, and transactions conducted on behalf of William, the principal and purportedly on behalf of William, the principal.

101.    Despite multiple requests, and formal requests initiated on February 3, 2025 and followed by correspondence on March 3 and March 10, 2025, Defendant Symons has failed, refused, and continues to fail and refuse to comply and render such accounting in any part.

102.     More than 30 days has elapsed since the requests were formally initiated on February 3, 2025.[7]

103.     Defendant Symons further has failed and refused, without legal authorization, excuse, or justification, to provide a writing or other record substantiating why additional time is needed and/or to comply with the requests.

*** 

104.     Defendants turned William's retirement and enjoyment of his golden years into the fight of his life. Any reasonable person would be alarmed, disturbed, and fearful. Defendants have caused William to be alarmed, disturbed, and fearful.

105.     Defendants lack any legal authorization, excuse, or justification for their actions in reckless disregard and violation of William's rights in all material respects.

<u>COUNT I</u>
(Tortious Interference with Contracts – Financial & Banking & Principal-Agent Relationship)
(Plaintiff v. Both Defendants)

106.     Plaintiff adopts herein by reference the allegations of ¶¶ 1 - 105 above as if fully set forth herein.

*Financial and Banking Relationships*

107.     At all times pertinent, William has had in place longstanding contractual financial and banking relationships such as identified at ¶ 69 above wherein he maintains his accounts that constitute his life savings.

108.     At all times pertinent, Defendants have known of each and all of the foregoing longstanding contractual financial and banking relationships.

---

[7] *See* D.C. Code § 21-2601.14(h).

24

109.    As described herein, Defendants unlawfully and improperly were motivated to, intended to, and/or knew/believed that the consequences of their actions substantially were certain to result, including, in pertinent part, blocking William from access to, information about, use and enjoyment of his life savings.

110.    As described herein, such as identified at ¶¶ 71-72, 74-75, 77, 79-80, 89-90, and 92 above, Defendants accomplished their unlawful objective by a number of means, some direct, some indirect. In combination, the various means Defendants used to accomplish the unlawful interference and inducing of material breach have been effective and harmed William as Defendants intended.

*Principal-Agent Relationship – Operative POA*

111.    On December 18, 2024, William put in place the Operative POA.

112.    As set forth above, Defendants were informed in writing of the Operative POA, including by writing transmitted to Defendants on or about January 13, 2025 that Defendants received by January 16, 2025.

113.    In addition, two months before, William had written to Defendants, communicating in substance his rejection of Defendants' Proposed Fee Agreement and any service purportedly to be provided by Defendants on his behalf.

114.    The cease-and-desist letter dated February 3, 2025 that Defendants received, reiterated to Defendants the existence of the Operative POA and Durable Power of Attorney for Health Care, including providing copies of both, and revoked status of the 2016 Limited POAs.

115.    As described herein, Defendants unlawfully and improperly were motivated to, intended to, and/or knew/believed that the consequences of their actions substantially were certain to result, including, in pertinent part, block William from having the benefit of the Operative POA and Durable Power of Attorney for Health Care he put in place for his benefit.

116.    As described herein, Defendants accomplished their unlawful objective of substantial interference with the Operative POA by a number of means. In combination, the various means Defendants used to accomplish the unlawful interference and inducing of material breach have been effective and harmed William and his ability for Glenda effectively to serve as his designated Agent.

117.    Defendants' intentional manipulation and prompting of material breach, such as described in both parts of this Count I, was wrongful per se. Alternatively, Defendants' manipulation and prompting of material breach, such as described in both parts of this Count I, if lawful, was done by Defendants with malice and legally unjustified in law for the purpose of invading William's contractual financial and banking relationships and principal-agent relationship with Glenda.

118.    As described herein, Defendants proceeded with malice and reckless disregard for William's rights.

119.    Defendants were *not* legally justified or privileged in proceeding in the manner described in this Count I.

120.    Defendants' unlawful and otherwise improper actions described in this Count I, and further detailed herein, proximately have caused harm, risk of irreparable harm, loss, and damage to William.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, William F. Harvey by his agent/power of attorney Glenda Brown, and against Defendants, jointly and severally, for (i) compensatory damages in a principal amount to be proven at trial in this action but that exceeds $75,000; (ii) punitive damages in the amount of One-Million ($1,000,000) Dollars, or other amount consistent with the circumstances, purpose, and applicable standard for the award; (iii) emergency, preliminary, and permanent injunctive relief, as may be applicable; (iv) an

accounting, as applicable; (v) attorneys' fees, as applicable; (vi) pre- and post-judgment interest; and (vii) such other and further relief as the Court deems just and proper.

COUNT II
(Invasion of Privacy – Intrusion Upon Seclusion, False Light, Misappropriation)
(Plaintiff v. Defendant Amy E. Symons)

121.    Plaintiff adopts herein by reference the allegations of ¶¶ 1 - 120 above as if fully set forth herein.

122.    As described herein, Defendant Symons has engaged in persistent conduct intruding on William's seclusion, including, for example, harassment of him and his designated agent, Glenda, tracking him, upon information and belief rerouting his U.S. mail without his authorization, coming to his home without his invitation, examining and manipulating his private bank accounts without authority and against his directions and instructions; *et cetera*.

123.    Defendant Symons' persistent conduct described herein constituted an intentional intrusion in the privacy of William and was and continues to be, highly offensive to a reasonable person.

124.    As described herein, Defendant Symons published false facts about William in a reckless manner. For example, falsely stating that he was incompetent and lacked legal capacity to, for example, make decisions related to his property, finances, assets and/or healthcare. This is confirmed as to the property manager for his condominium community and a number of the financial and banking institutions with whom William has maintained longstanding relationships, such as Capital One.

125.    Defendant Symons' persistent conduct, as described herein placed William and his designated agent in a false light with knowledge of the falsity and/or with reckless disregard for the falsity in a manner which would be highly offensive to a reasonable person.

126.     As described herein, Defendant Symons intentionally misappropriated William's name or likeness, by, for example, communicating and representing to William's financial and banking institutions and property manager, among others, that she in fact was his authorized, legal designated agent. For certain that was false starting after William wrote to her on November 22, 2024 and on December 18, 2024 designated Glenda as his Agent and formally revoked prior POAs. Upon information and belief, Defendant Symons further boosted her misappropriation of William's name or likeness as though she were his authorized, legal designated agent, by touting her status as a legal practitioner with her own firm, *i.e.* Defendant Law Firm, purporting to act on his behalf.

127.     Defendant Symons misappropriated William's name or likeness as described herein for her benefit and for the benefit of Defendant Law Firm.

128.     In furtherance of these intentional invasions of William's privacy, Defendant Symons has engaged in persistent harassing, intimidating, threatening, and attacking of William's lawful designated agent, Glenda, and her reputation.

129.     As a natural and proximate result of the intentional invasions of privacy described in this Count II, William suffered distress and anxiety.

130.     Defendants' unlawful and otherwise improper actions described in this Count II, and further detailed above, proximately have caused harm, risk of irreparable harm, loss, and damage to William, both directly and by his designated lawful agent.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, William F. Harvey by his agent/power of attorney Glenda Brown, and against Defendant Amy E. Symons, for (i) compensatory damages in a principal amount to be proven at trial in this action but that exceeds $75,000; (ii) punitive damages in the amount of One-Million ($1,000,000) Dollars, or other amount consistent with the circumstances, purpose, and applicable standard for the award; (iii)

emergency, preliminary, and permanent injunctive relief, as may be applicable; (iv) an accounting, as applicable; (v) attorneys' fees, as applicable; (vi) pre- and post-judgment interest; and (vii) such other and further relief as the Court deems just and proper.

<u>COUNT III</u>
(Trover and Conversion—Wrongful Taking)
(Plaintiff v. Both Defendants)

131.    Plaintiff adopts herein by reference the allegations of ¶¶ 1 - 130 above as if fully set forth herein.

132.    As described herein, Defendants, without William's knowing authorization, intent to authorize, or legal justification, exerted hostile dominion and control over William's property, specifically his financial and banking accounts identified herein, in denial of William's rights.

133.    William was in actual possession of his property and is entitled to immediate repossession of his property. All funds titled in William's name belong to William and not to either Defendant.

134.    Defendants acted with ill will and with the intent deliberately to deprive William of the rightful possession of his property.

135.    William is entitled to immediate possession of the specific and identifiable funds that Defendants routed out of accounts opened by him in his name and into account(s) that Defendants created out of state (upon information and belief in the State of Colorado) in no small part to facilitate Defendants' intent to alienate William from any practical ability freely and readily to use most all of his otherwise readily available financial resources.

136.    Defendants' trover and conversion – wrongful taking described in this Count III, and further detailed above, proximately has caused substantial harm, losses, and damage to William, among others.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, William F. Harvey by his agent/power of attorney Glenda Brown, and against Defendants, jointly and severally, for (i) compensatory damages in a principal amount to be proven at trial in this action but that exceeds $75,000; (ii) punitive damages in the amount of One-Million ($1,000,000) Dollars, or other amount consistent with the circumstances, purpose, and applicable standard for the award; (iii) emergency, preliminary, and permanent injunctive relief, as may be applicable; (iv) an accounting, as applicable; (v) attorneys' fees, as applicable; (vi) pre- and post-judgment interest; and (vii) such other and further relief as the Court deems just and proper.

<u>COUNT IV</u>
(Fraud)
(Plaintiff v. Defendant Amy E. Symons)

137.    Plaintiff adopts herein by reference the allegations of ¶¶ 1 - 136 above as if fully set forth herein.

138.    As described herein, in and about 2016 Defendant Symons fraudulently induced William to appoint Defendant Symons as his power of attorney with purported authority materially beyond his reasonable expectation and understanding.

139.    William's reasonable expectation and understanding in substance was that the purpose of designating her at the time was limited to a potential need for same in connection with his then contemplated surgery, such as hip surgery, at the time he signed the 2016 Limited POAs. If and only if he became incapacitated in connection with a health care procedure such as a contemplated surgery, then the 2016 Limited POAs should benefit him. His reasonable expectation and understanding further included that Defendant Symons would proceed only with his actual knowledge, to the extent reasonably feasible, of each and all of her material actions purportedly on his behalf.

140.    Defendant Symons made false and/or misleading statements (including by omission of material fact) to William that Defendant Symons intended to serve only on an add needed basis as generally described above, and in accordance with William's reasonable expectation then known to Defendant Symons, strictly in William's best interest, and in good faith.

141.    The last substantive line of the 2016 Limited POA, immediately preceding William's signature line, states, in pertinent part, that he "recognize[s] that the powers given in *this document will become effective as of the date of my incapacity* or as specified within." [Emphasis added.]

142.    The foregoing aligns with the Revoked POA—Health Care, that William executed at the same time as the 2016 Limited POA, providing that it would "become effective on my inability to make or communicate health care decisions as determined by my attending physician[.]"

143.    William's reasonable expectation known to Defendant Symons and understanding certainly included that she never purport to act on his behalf after (i) rejecting any offer or suggestion for any such further action; (ii) revoking in writing any prior authority given to her in writing; and/or (iii) orally demanding that she stop purporting to act on his behalf and in fact stop actively harming him.

144.    Unbeknownst to William until Defendant Symons revealed of her actual intentions in recent months starting November 2024, at all times pertinent Defendant Symons has had a contrary existing intention—specifically to use her status as power of attorney for William, and her confidential relationship with William, over time to take control of William and the vast majority of his life savings – overridingly for her personal benefit or gain.

145.    William justifiably relied on Defendant Symons' commitments, inducements, promises and statements to act only as necessary, with his full knowledge to the extent reasonably feasible of each and all of her material actions purportedly on his behalf, and as generally described herein in this Count IV.

146.    Defendant Symons' fraud as generally described in this Count IV and further detailed above, proximately has caused harm, risk of irreparable harm, loss, and damage to William.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, William F. Harvey by his agent/power of attorney Glenda Brown, and against Defendant Amy E. Symons, for (i) compensatory damages in a principal amount to be proven at trial in this action but that exceeds $75,000; (ii) punitive damages in the amount of One-Million ($1,000,000) Dollars, or other amount consistent with the circumstances, purpose, and applicable standard for the award; (iii) emergency, preliminary, and permanent injunctive relief, as may be applicable; (iv) an accounting, as applicable; (v) attorneys' fees, as applicable; (vi) pre- and post-judgment interest; and (vii) such other and further relief as the Court deems just and proper.

COUNT V
(Breach of Fiduciary and other Legal Duties)
(Plaintiff v. Defendant Amy E. Symons)

147.    Plaintiff adopts herein by reference the allegations of ¶¶ 1 - 146 above as if fully set forth herein.

148.    A fiduciary relationship existed between Defendant Symons and William.

149.    William reposed his trust and confidence in Defendant Symons largely based on her having befriended him and her professional status as a legal practitioner.

150.    Defendant Symons acknowledges the "fiduciary obligations" she had to William. Defendant Symons wrote, I "am honored that you trust me enough to do this."

32

151.    As generally described herein, Defendant Symons led William reasonably to believe that he may trust her and as a result she acquired influence over William. That facilitated Defendant Symons' betrayal of William with ease.

152.    Defendant Symons owed fiduciary duties of care, competence, diligence, loyalty, and good faith to William.

153.    Defendant Symons further owed to William a duty not to violate any laws designed to protect persons such as William, such as criminal anti-stalking statute at D.C. Code § 22-3133; and financial exploitation of an elderly person at D.C. Code § 22-933.01. Defendant Symons owed to William a duty not to violate such laws in the name of purporting to act in the best interest of William.

154.    As more fully described herein, Defendant Symons materially breached her fiduciary and other legal duties (including common law, contractual, and statutory duties), demonstrating willful misconduct and gross negligence toward William.

155.    In connection with Defendant Symons' breaches of duty, Defendant Symons acted in bad faith, with dishonesty, and with unlawful and otherwise improper purpose.

156.     Defendant Symons' breaches of her fiduciary and other legal duties to William, as generally described in this Count V and further detailed above, proximately have caused harm, risk of irreparable harm, loss, and damage to William.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, William F. Harvey by his agent/power of attorney Glenda Brown, and against Defendant Amy E. Symons, for (i) compensatory damages in a principal amount to be proven at trial in this action but that exceeds $75,000; (ii) punitive damages in the amount of One-Million ($1,000,000) Dollars, or other amount consistent with the circumstances, purpose, and applicable standard for the award; (iii) emergency, preliminary, and permanent injunctive relief, as may be applicable; (iv) an accounting, as

applicable; (v) attorneys' fees, as applicable; (vi) pre- and post-judgment interest; and (vii) such other

and further relief as the Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC


By:     *Alexia Kent McClure*
_____
Alexia Kent McClure, D.C. Bar No. 443983
1101 Wootton Parkway
Suite 700
Rockville, MD  20852
Direct Phone:  (301) 838-3232
Facsimile:  (301) 354-8232
Email:  amcclure@steinsperling.com

Attorneys for Plaintiff


JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.


*Alexia Kent McClure*
_____
Alexia Kent McClure, D.C. Bar No. 443983

<u>VERIFICATION</u>

I DECLARE AND VERIFY under penalty of perjury that the factual statements set forth in the foregoing Verified Complaint for Equitable Relief (Injunctive Relief and Accounting) and Damages are true and correct.


William Frederick Harvey,
    By his lawful power of attorney, Glenda Brown


_Glenda W. Brown_
Glenda Brown, power of attorney for/for the benefit of
William F. Harvey

_3/26/25_
Date